Please proceed Case number 15-1526 and 1558 United States of America versus Sarah Ann Calvetti and Demas Hernandez Cortez Argument not to exceed 10 minutes for each defendant and 20 minutes for the plaintiff Mr.. Is it Brewster? Brewster and Mr.. Martin you may proceed for the appellants You Good morning, may it please the court John Brewster appearing on behalf of Demas Cortez and Could I please reserve two minutes for rebuttal? Thank you This case involves the appeal from a jury trial where my client mr.. Cortez Was convicted But the main issue here is the traffic stop and the motion to suppress judge Cox denied that motion on September 14th of 2014 and that happened before the very important case of Rodriguez against the United States, which was decided by the 2015 and This deals with the traffic stop that was Similar, but I would argue the facts of this case Are much more egregious as far as what the officers did Even compared to that Rodriguez against the United States case and That's where Rodriguez said that it is unlawful To prolong a stop beyond the mission of the traffic stop issuing a ticket and Here we had Sara Calvetti driving a van and a trooper Susanna who did not have a dog unlike in Rodriguez stop Calvetti Because she was either driving too slow or making an illegal lane change but the thing here is Well It's interesting that on the video recording troopers assign that does in fact say that You were going 55 He does admit that all right say that Yes, I'm on that basis Because the legal limit in Michigan is 55 is on the low end crossing the line and I'm sorry Wasn't there something in addition to going too slow? Well, that's paced at 52, but then on the video when Troopers assign I was talking to Calvetti We have aces for stop was this going too slow? Yes, but then he said a lane change but that's what I'm asking about was the lane change legal We believe so because she was in the Center lane of a three-lane highway, so I don't believe that was Illegal either, but I think in your brief on appeal. I've got your brief. You have two issues the first issue. Yes Unduly prolonged I don't yes raising an issue that the initial stop itself was unlawful And if you have well raised it in your brief tell me where Well co-counsel, I know did brief that and so but I am Going after the red flags of the unlawful detention after the stop You are challenging the initial step well, I would join in Any too late now if you haven't well well, I have as far as the well what I'm saying to is Troopers assign as part of a intervention team really and he's only written five tickets in five years, so Take it for what it's worth there, but but yes Decide only the issues raised on appeal and if you haven't raised the issue on appeal you have forfeited the issue I mean, that's just basic law Well tell me why you haven't forfeited the issue of the illegality of the initial stop which appear you appear want to raise today well Well, I did raise that issue of going 55, and that's illegal and in a footnote. I have the 55 is a legal speed limit in Michigan But Past that the illegal detention. I think we have a number of red flags On that there's only a 15-minute period is there not between the stop and the consent to search Well and in Rodriguez seven to eight minutes was too long But answer my question they're so here I believe 15 to 20 minutes as a fair a statement yes Well Well De minimis Rodriguez is de minimis could was seven to eight they ruled there, so Yes, so I would say reasonable suspicious just suspicion indicators in Rodriguez that we have here about The one that jumps out to me is One of the defendants was moving from one state to another but didn't have had no Belongings in the car to indicate that the move was going on or Other things did Rodriguez have anything like that No They didn't have factors precisely the same but a lot But Well There are a number of weak Indicators in many cases and every case is a little different, so I would argue though that these are weak indicators that troopers assign a relied upon and prolonged the stop where even the dog did not alert a Second dog was brought to the scene They broke down panels They jumped on Well I I think There are cases to where consent to search Where police officers have guns or or there's another officer with a rifle outside? You know I get to argument isn't helping you I'm You ought to keep it in some kind of chronological order if if in the last thing we were talking about was The story that she made up or had that she was moving There's also the aspect. She didn't have a driver's license. It's also the aspect. She didn't have a registration Don't all of those things require investigation Yes, and Those were cured Her driver's license was found. Why yes, I mean that period is 15 minutes somehow Illegal Maybe not to that point, but it was cured when my argument would be that when they found her purse and her license They still proceeded to bring Booker the dog The dog did not alert after that they still proceeded to take the panels off the van They couldn't find anything then Trooper Schreiber a second trooper jumped up and down inside the van and the dog did not alert and That detention became too long Well, it's my articles were taken off the van after the consent right it's part of the search of the van Arguably yes, if you they're allowed to take the time to search the van after they've consented to search I mean, aren't you kind of combining apples and oranges here? well, and and Nothing was found and then further detention to the length of about an hour and 20 minutes And then further You could just outline it very brief an optical. Yeah. Oh handsome. Yes, and And the optical scope was even used after that. So it's a very intrusive search. So I'd ask you to And Why I'm arguing really no consent but and Then under Rodriguez obviously this was beyond the mission of the Ticket, I'm sorry Well, they could only can stay only consented to a search that was limited in scope to evidence that they crossed the line. Is that them? No, my basic nature of your argument with her is I I Don't hope of the consensus exceeded or you didn't or he didn't she didn't consent. I Don't think she consented that your argument that she didn't yes No, not no I mines, uh Well, the government argues consent I argued it is not okay. Thank you. Thank you You Good morning, your honors may it please the court Benton Martin of the Federal Defender Office in Detroit on behalf of Sarah Calvetti I'd also like to save two minutes for rebuttal I'm actually going to start with the second point in our brief, which is the legal interrogation that occurred after the Traffic stop and I think there's a blatant Fifth Amendment Violation here and that ms. Calvetti signed her clearly signed her name next to the word To say no that she didn't want to answer questions When they took her to the field office to interview her and the agent admitted on the stand that he saw that And yeah, he kept asking questions Did the Did the government use her answers against her? I looked at the transcript and appears that defense counsel's Asked the questions that brought these statements in and it was therefore it was the defense that brought it up rather than the government Am I wrong about that? I Believe it was during the government's that the comment came out that Calvetti had agreed to assist with the controlled delivery That was going to government solicited that answer That was my understanding And I will double-check and make sure that I thought I thought it was defense counsel I mean, I I agree with you that after the Miranda rights were invoked violates Miranda, right have any further interrogation and There's a so there's a there's a violation there the the government argues. Okay, there's a violation. We never used that Evidence against her and if it was used it was used by the defense and not the government And I thought they were probably right on that. Well, I'll double-check the citation. I had was one page ID 130 1335 even even if the government used it was it harmless error or was it reversible error? well, and I think and actually this is I think that the bigger problem here is that during the interrogation they Obtained her consent to search the the home. Okay, that's a different issue than her statements though. I mean, that's correct But okay, let's get let's stay on the statements here. Okay, if if the government actually used the statements, which I don't think they did What was that here? Harmless or was it was it or does it require reversible reversal here? I Do think it requires a new trial I think that it putting her as a necessary part of the controlled delivery was a harmful thing that would that the jury would have Seen and I do think that it's even more harmful that the evidence from the search of her house came out and we recognize How does that violate Miranda you have her invoking her Miranda rights? But then she consents to a search. How is that a testimonial Action by her by consenting to search I don't see any testimony there That and that's what Miranda is about. It's questions that would elicit a Testimonial response and consent to search doesn't seem like it fits Miranda to me, right? And I recognize there's there's case law against us on the idea that it Violates Miranda itself. The bigger problem is really I think the way that it contributes to her consent being Involuntary and I think that requires to look at the totality of the circumstances Including that they had violated her Miranda rights and there's other factors to look at that There was this prolonged search. She told the officer she was sleep-deprived. She'd been driving 24 hours straight then they ignore her request to speak with them and There's no evidence that she was told that she could refuse consent and I would point in particular to the Haynes case that cited in our brief and there that was following an illegal search of a vehicle that they asked for consent and the court looked at the illegal search of the vehicle and they noted that when suspect witnesses a Blatant disregard of their rights. There's a sense of futility that's created in a further Ability to assert the right argument here that the consent There is no consent as a matter of law Under these circumstances that the consent was involved that the consent to search was involuntary as a matter of law or as a matter of fact Both I think the law requires us to look at the totality of the circumstances which then looks at all the facts Okay. Well if it's fact Dependent right you request an evidentiary hearing on these factual issues in the district court Yes, it was clearly stated that there was an involuntary that the consent was involuntary I know did you ask for an evidentiary hearing so the judge could make a finding of fact as to that issue that you now Important for us. I'll have to look back and see if there was actually a request for evidentiary hearing in that motion Don't you need to do that? And that would be an issue on appeal that I requested. I have a factual question here as to her voluntariness of consent and Judge I need to have a finding of fact as to that factual issue well to do that you have to preserve the issue of and request the factual hearing and Have a have a ruling and I don't think you did it here. I And that I don't think your client. I mean, I don't know you weren't the trial counsel Yeah, but this was clearly raised and when they raised the issue of the Miranda violation was clearly raised that her consent was Involuntary the trial judge has to be put on notice and judge We need to have a hearing on this so I can present her testimony So you can see that she was sleep-deprived and that she could not have consented under all the factual circumstances If that's the the argument right fact base We need rulings on the facts for appellate court, right? If it's as a matter of law, we can rule up here But if it's fact-based you have to preserve the issue. So we have the record, right? I mean, I just don't know if we have the record if it's factual based Well, the district court never even got to the involuntariness question because they found that the district court found there was no Didn't preserve the issue and objected And then appealed the denial of evidentiary hearing. I don't know if it's preserved That's well, the district court found there was no Fifth Amendment violation in the first place So it really didn't there it kind of killed that issue right at the start. There was no chance to Further elaborate on the involuntariness the the whole analysis of involuntary statements was that there's no Fifth Amendment violation. Thus I don't think that they're That the statements were involuntary and I would note that the government actually bears the burden of proving that she consented So in terms of establishing the facts of her consent That would have been the government's duty to do that and the government filed a supplemental brief yesterday Addressing this consent issue. I note that they still they don't meaningfully respond to the argument that it was an involuntary consent and they Concede that the evidence of the consent is is scant that the Everything about the interrogation is scant and that it's their burden They're arguing that it was harmless error Even if the consent was involuntary, how do you respond to that because you you have the evidence in the car itself, right? That is separate from the consent to search the house and the evidence in the for the car is obviously I think sufficient for the conviction, but how would that have been? how is the evidence in the house not cumulative or Excessive or how's it not harmless? How did it affect the verdict when you already have the evidence for the car? I think it played a huge role. I'd note that The government emphasized both in its opening and closing about her residence. They called it a stash house in the opening They called it a dope house in the closing There was nearly all of the witnesses talked about the house the first and second both the first and second witness talked about they called Witnesses that talked solely about the house how it didn't have much furniture in it There was Two witnesses called by Calvetti and one of them was just solely to contest the evidence that came from the house And about the idea that this there was no furniture and that it would have been a stash house because of that When you look at the evidence of the videotape and we've raised this as part of our sufficiency argument There's nothing there to link Calvetti to any knowledge of drugs And I think that the government was Relying heavily and why they emphasize the home so much is that there was and why it's not cumulative is that the home? The government argued was able to argue that the evidence from the home Was evidence of drug trafficking because of all these items that were found there So I really do think it made an important impact on trial And that's why we think there should be a new a new trial without those statements Thank you I Sorry, thank you Good morning may please the court Shane Carly for United States I'd like to start first with the traffic stop and just put things in sequence because I'm I Think some of this has gotten jumbled together This was a 15-minute traffic stop and then there was an hour-long investigation and an arrest And I say it's a 15-minute traffic stop because at this point troopers. I seen it is trying to investigate what? After he has pulled over miss Calvetti and mr. Cortez. She's a no. She is unable to produce a driver's license the Well the the driver's license and this is something mr. Raised the purse was actually not found under her seat until about an hour and five minutes into it This is almost the conclusion of the search She's still asking right before And I know you've seen the video right before she starts deleting the contacts of a co-conspirator on the phone That she's still asking have you found my purse? And that's the point when the troopers say yeah, it was underneath your seat. This is about an hour and five minutes into it But when she's pulled over so three minutes into the stop She comes back to the patrol car and says I don't have my license So at this point the officer has to investigate this takes this traffic stop outside the context of a typical traffic stop So even if we're talking about the de minimis seven to eight minutes in Rodriguez This is not a typical traffic stop because there's no license. So three minutes in she's saying no license Then shortly after that we get into the fact that She has no registration. This is five minutes in so now this is not only is she a licensed driver? Does she have a license? This is also is she legally entitled to drive this car? She said she paid it she that this was her car But then as he's running the information in his database, it doesn't come back registered to her And this is where the sequence of events become more and more problematic for Miss Calvetti She shows that she says that she's sleepy. So the officer is concerned whether she's fit to drive This is where she then mentions and this is about eight of eight minutes five seconds into the video This is when she says I've been driving 24 hours straight from Mississippi and so on It's at about 12 minutes in that troopers I seen it walks to talk to mr. Cortez This is where the conflicting information arises because as he returns to the vehicle he returns to the vehicle at 1220 I'm sorry, she returns at 1210 and says so whose car is it? Because at this point he's gotten information from Miss Calvetti that it's her car, but then he's talking to mr. Cortez and he's saying No, it's my friends and Miss Calvetti explains it that No, they're trying they're in the process of purchasing it the point of all this is there's a lot of different areas the trooper has to investigate to take this far outside the context of a typical traffic stop and It's at this 12-minute mark that he starts to investigate and try to understand. Okay, does she is she legally entitled to drive this car? He's asking questions about does the real owner know that you have the car? How old is he At this point He doesn't know if she's telling a story or if it's true and an officer in this context in this sort of situation will be entitled To even contact the driver and say hey, by the way Can this person drive your car because it's not like she's even a relative where there's a similar last name And it's a it's after this. It's about 1235 when we start to have the information about mr Cortez moving to Michigan now I know there was a reference in Miss Calvetti's reply brief that These travel plans were not inconsistent, but they were both internally inconsistent and externally inconsistent if we look at 1235 in the video Miss Calvetti is insisting that it's not insisting but it's stating that mr. Cortez is the one that is relocating from Houston to Michigan He's a truck driver. He's being transferred up here. This is very different than what mr Cortez had said which was that miss Calvetti was moving to Michigan. These are Not reconcilable. These are substantially inconsistent statement. They're mutually exclusive There's no way to reconcile who is moving from one end of the country to the other So there's they're externally inconsistent, but they're also internally inconsistent if we look at exhibit to be which is page ID 1520 There was a gerbil cage. There was a small bag I believe there was a coat there were a couple clothing items on four or five hangers There was what looked to be at most about a banker's box and maybe a printer box This is not the sort of personal belongings that you would expect from someone that is moving cross-country Even if there's a moving ban, you would expect a little bit more than just this and then of course There's the motorized wheelchair. So we've got these inconsistent statements internally and externally and At 1453 is when miss Calvetti provides consent to search now the officer does continue to investigate at this point But the case law is very clear that a traffic stop You have to terminate the traffic stop or you can at the point when either there's reasonable suspicion or consent consent And if 1453 is when we have consent that consent has never revoked now The officer does continue to investigate and it's in the 18 minute to 23 minute range that we hear about the drug charge The fact that miss Calvetti has a as a prior drug charge for a similar sort of incident She was pulled over with another gentleman or 50 pounds of marijuana in the car She only got probation and this comes about because he's asking She's she's already said she's a nurse and he's asking whether that prior drug charge affected her license and she said no I didn't have any prior convictions. And so I Only got probation. In fact, they terminated it early. It's at 2335 in the video that she's talking about. Mr Cortez having a drug charge It's at the officer when he learns this is asking for the detailed spelling of his name so he can run this in his database At 2820 in the video is when miss Calvetti provides that and also mentions that mr Cortez served 18 years for a drug charge. So this is not an insignificant drug charge 18 years That was at 2820 on the 18 years and then at 2845 in the video she mentions that he was also involved in a shootout These are a number these are certainly Factors that would play into whether this was a reasonable detention to investigate as I said at 1453 there was the consent and so that point this is converted from a traffic stop to a consensual encounter, but It's not until 3545 that the search actually begins and the search lasts approximately Let's say it's about 37 minutes 40 minutes or so because it's at 112 of the video that mr Cortez is placed into custody and miss Calvetti shortly thereafter. I know there's a lot of Inflammatory References to the officer jumping up and down trying to in the car and things of that nature That all happens after this consent that all happens after the search begins, so that's all happening in this 35 minute to 108 112 minute range, we're not seeing that that's all off the screen But it's at that point that we're that that sort of thing happens When we exclude that when we when we separate the details of the search from the details of the traffic stop traffic stuff they're not contesting with was based at least in part on a failure to provide a lane change and Then when they you separate that from the details of this reason suspicion and then the concern consent This was not a problematic Traffic stop and this was not a problematic search. It was certainly reasonable under these circumstances under the Fourth Amendment Could you address the voluntariness of the consent to the search of the house? Absolutely. I'll turn to that your honor. I Think judge Griffin kind of touched on the the the part here That's most problematic for for us and that's that there was no development of the record below and I I must concede that the the burden Is on the government to show consent? to search Actually, let me rephrase or let me just inquire When you were asking consent, I jumped ahead and assumed you meant consent to search the house Did you mean that or the consent to search? Okay, I just want to make sure you didn't mean consent to search the car So it is our burden to show consent to search the house. I went back and I've read the record a number of times Clearly the government as well as the district court sort of caught off guard and did not Even recognize that that was an issue based on the way it was briefed. I'm not trying to excuse that I'm not trying to mainly briefed on the Miranda issue and the yes, your honor That's the way the court and the council thought about it, that's clearly the case your honor the the way it was briefed below was Miss Calvetti said there was a Miranda violation, which I'm conceding there was clearly a Miranda violation But she said there was a Miranda violation and that Miranda violation tainted the consent to Search my house. Now the government briefed it before the evidentiary hearing and said no she initiated She's the one after she invoked Miranda Initiated the conversation with the DEA agent then they have the evidentiary hearing which is very short. I think it was about 35 page record It's a very short. There is an evidentiary. There is an evidentiary hearing on the Miranda violation Now there's a more evidentiary hearing on the Miranda violation This was a belief at the end of June very short and the that's when the agent said yes She signed it, but she didn't say anything and so I kept asking her questions. So then the AOS a follows up and said You initiated with her and and the agent said yes That's why I'm conceding. There's a Miranda violation because this is not Miss Calvetti Initiating the conversation That's it No, your honor Frankly the the statements by themselves there was no value evidentiary value of the statements, but no they were actually solicited by the council. Mr. Brewster Yes, mr. Brewster actually That's correct Yes, page 1337 makes There's there is there's no question that is correct. There's no question. This is a page 1337 of the record 1335 Actually, mr. Brewster asks it with Consented to the house and The government does have the burden does Then she says well it was involuntary. Is that an affirmative defense? Which says yes, I consented But it was involuntary seems At that point. Is that her burden once there is a consent on record to show that yes I consented but Or is that still the government's burden? I'm just asking I think I think the right answer And and because there's no record really of anything here I'm just saying no. I know I think the right answer is that when when we're arguing there's consent Then we have to show that that consent was voluntary. Okay, so I think that's right now she raises Did they request an evidentiary hearing on the issue that her consent was involuntary Because she was sleep-deprived or of this kind of stuff your honor. There was no development of the record They didn't ask for a separate evidentiary hearing and when judge that's but that's a factual issue that we would normally want Did she submit? Documentary evidence in the form of affidavits or anything else to get the threshold Showing necessary for the court to have an evidentiary hearing or did she just make arguments to the effect? She just made arguments to on the initial now recall There's only one motion as to this sleep-deprived this kind of stuff. That's factually based Did she support it with? Documents or Evidentiary support with that which would really require an evidentiary hearing or did she just argue it actually none of the above So that actually is coming drug. They didn't even argue. No, it's it's very peculiar actually, and I'm not sure where the fault lies and Perhaps the best way is just to explain it and you can be the judge of that What happens is they have the evidentiary hearing and and my read of it is everyone's sort of caught off guard when the DEA agent Says that he effectively ignored her Miranda Recall that the government had briefed that she'd initiated The district there is no argument after the evidentiary hearing so neither party argues anything Defense counsel doesn't develop any of this issue and there's no development at all as to whether her consent to search is voluntary Whether she was sleep-deprived or whether she understood anything any of that nature. No one developed it because frankly I think no one really recognized this The district judge then rules a few weeks later and and and clearly just I think also missed the Snippet at the bottom of the of one of the pages where the agent effectively ignored it Now miss Calvetti did not ask the judge to reconsider didn't say hey, wait a minute You missed a huge problem here and there was no further development when Calvetti is arguing now that she was sleep-deprived. She's relying on the Evidence from trial and granted she did she did renew her motion to suppress so she can do that There was no development of this record whatsoever and and frankly It was unclear to me until the reply brief that this was even the crux of their issue as they claim Otherwise, I would have made a harmless error argument Which is why I tried to put everyone I noticed that There there may be a problem here if there is there's no record developed, but at the end of the day It doesn't matter and why doesn't it matter at the end of the day? Well, your honor, I think I think the best evidence of this or the best Indication of this is the fact that I'm relying I relied exclusively on the video in the patrol car In support of the fact that she had both knowledge and and of the conspiracy and participated in it but also Did what get to the jury evidence that the The photographs did your honor the photo? So so I think we also have to think about what is the evidence that flowed from this? I think there's no question from the record that her statement was solicited and even by statement. It's essentially her Agreement to participate in the control delivery that was solicited by Defense Council. So what did we do? we introduced photos from the house and Testimony about it, but this was both Cortez and Calvetti and recall that. Mr. Cortez took the stand in sort of a strange Falling on his sword for his girlfriend and he said yeah, and I put all that stuff there I mean if you look at At the end of his at the end of his testimony. He actually claims ownership of those very items So at the maximum probative value there would be indicia of packaging the saran wrap dryer sheets Costco sized dryer sheets and perhaps some grease and Mr. Cortez actually took wouldn't have resulted if there had been no consent to the search of the house Well, I can't say I wouldn't I can't say it wouldn't result but I also can't I'm reluctant to throw out a legal argument here when I didn't raise it it's hard to say that it's harmless because it's what her argument now and another part of her argument is is is that There wasn't enough evidence that she knew about drugs She just knew something was amiss but not drugs and this is this seals the deal with respect to drugs, right? Well, I'm not sure I agree your honor. I think there's a couple of reasons for that first if you look at the jury If you look at the last day of trials, this is This is entry number 86 in the docket. The jury asked for the video So after they go back to deliberate they asked to watch the video again, they're not they don't receive the photos from this from the house Second as I was mentioning, mr. Cortez is At trial, I'm sure they did I'm saying during their deliberations They requested specific evidence and that was the video they did not request evidence of that You know, we read into that as much as you will but that is all they asked for Mr. Cortez claimed that he was the reason why those items were in the house So he takes ownership of this in this attempt to say look she had no idea what was going on And then as I mentioned the video by itself if we look at what the video says We've got as soon as as soon as mr. Cortez gets in the car. Calvetti is immediately trying to reconcile Like what did you say? There's what I said, this is at 3604 This is also page IDs 1495 through 99 This is all my heartless error again, but it's also the sufficiency. I think they're actually interlaced interrelated Violation so we have a constitutional violation agreed So the standard is beyond a reasonable doubt. I recognize that as the standard. I recognize it's a hard to if this if this court were determined that that issue is preserved and I'll be it without any development. Then I recognize that this harmless error argument is a long shot But at the same time I do think the evidence supports that and so you're back up as it's not preserved Because even though it was kind of referred in passing they didn't really Do their job and getting the facts before the dredge your honor I think if you look even at the appellants initial brief his opening brief if you if you look at the statement of issues It's not even referenced there. It's a fire That's what we refer to as the opening I mean the reply brief is a rebuttal brief really and you can't raise new issues on a reply brief I'm not saying he raised a new issue, but I if you look at the statement of issues is not referenced there It's simply references the Miranda violation He spent six pages discussing that and the last page is referenced does reference this consent I'm not going to minimize that the issues on appeal are the issues that are framed in the appellant statement of issues and Issues raised in footnotes or in passing are not Well, if that's the case, then it's not before you if you look at the statement of issues It'd be the easiest way to resolve it then agreed With them we disagreed with that though. What would that help both parties or just miss Kelly? If you if you disagree with what whether this was a voluntary consent to search of the house And whether it was harmless or not if you disagree that it seems I don't harmless with respect to him, but not with respect to her. I don't see how it would be I don't so I see how it affect mr. Cortez when he takes the stand and admits that he was involved I mean he accepts full responsibility for everything It's it's a slam-dunk that it was harmless as to him But you have to make us a little bit of a stretch argument to say it was harmless as to her well I'm not sure I agree. It's a stretch, but yes, your honor. It's tighter argument a great tighter argument is fair wouldn't you agree that With respect to whether there's sufficient evidence that you have to take this evidence into account even if it wasn't improperly admitted Because we always do some because if there's not sufficient evidence. There's no retrial well I agree you do so though you do this substant you do whether there's sufficient evidence Taking into account all the evidence then later on you go to whether There's a violation and if it was was it harmless or not I agree that that's the analysis your honor I'm simply saying that if you look at the sufficiency if you look at the fact that she is clearly expressing concern when the Officers and the dogs are around in searching around the trap This was a if you look at page ID 1507 of the record She explains to mr. Cortez why she pulled over the way she did tried to coast in that middle lane all goes to harmlessness Then mr. Harmless and also sufficiency I mean, I think how it goes to sufficiency because I don't see how there's any question that there's sufficiency because they had these doc they Had these pictures of of drugs in the house. No, no, there were no drugs in the house your honor What are what were the people it was they were the pictures in the house and perhaps this is the the? Wrappers or whatever drug it was like four or five boxes of Costco sized dryer sheets Read into that what you will I mean there was evidence that that the the 18 the 16 kilograms of cocaine in the car were wrapped In dryer sheets, but there were Costco sized dryer sheets There were saran wrap three or four boxes of that and minimal furnishings So is that packaging material? Sure. Is it also innocuous? Sure. And mr. Cortez said yeah I'm also the one that put that there. What I'm saying is if you're doing a Sufficiency of the evidence to convict you have to include that and with that a reasonable juror certainly could convict. I Think there's no question There's sufficiency the evidence But I think even absent that and with the harmless error when we look at what she does with the phone That's why I think it's harmless But I do think it's an interesting procedural issue that before you even get there I think well, those are interesting issues, but I think probably the most important issue is the The Miranda violation and the consent to search and whether the consent to search Violates Miranda when she says that she doesn't want to answer any further questions, but then they asked her Will you consent to search does does the request for consent to search? Is that included within Miranda or not? Oh, no, and I think the case the case all is very clear on that I mean, I have six circuit unpublished I provided both of those but there's the the first case the 2002 case. I believe that's I First of the two is almost analogous to this and it's a situation where the agents effectively ignore an invocation of counsel and then ask for consent to search and this court found I'll be in an unpublished opinion in 2002 a Consent to search is not interrogation because it's not intended to elicit some sort of criminal or evidentiary Testimonial nature it's a yes or no Now in that case there was further development to show that that consent was voluntary, which we don't have here Otherwise, I would have simply relied exclusively on that That case and every court that's addressed this other than I believe a DC district court that they cite Every court of appeals that I've found has said Miranda is irrelevant to a consent to search. These are completely these are wholly unrelated Thank You counts, thank you Good Morning just a couple more points. The government says Cortez fell on the sword for his girlfriend and for that reason I did ask for Cortez to be given acceptance of responsibility points. I don't think he in any way Hid the fact that the drugs were his and so I think judge Cox should have given him acceptance of responsibility points under the sentencing guidelines 3 e 1.1 and That's in my brief and I Cited a case in my reply brief with a number of cases but one was United States against Smith where it shows a number of Indicators on a traffic stop that were weak, but Those were things even such as the driver appeared to be scared and nervous and The driver even appeared to be stoned and had a white mucus around his mouth Neither of the defendants were listed on the rental agreement things like that. So different things Like that we're not enough in this circuit to provide enough reasonable suspicion to further search the car, so I ask you to take those into account as well Thank you. Counts. You're welcome We appreciate your service under the Criminal Justice Act Well, do you have rebuttal to I'm sorry. Go ahead. I'm miss misspoke I'm sorry to take more times. They combine rebuttal, but that's right. Please go ahead It's a long morning and I apologize. I did want to correct it judge Griffin You're correct that the citation the 1335 was it was not Calvetti's counsel as Cortez's that brought out the comments of but that were used from her interrogation that were No, not at that time But I wanted to address this idea that it wasn't raised in our our brief and I I Would point the court to there's three pages 24 25 26 of our brief in regards to the involuntariness of her statement and the part I footnoted was actually this idea that it was a these unpublished decisions from the Sixth Circuit talking about Miranda itself that was footnoted and because of those decisions is why you know I didn't spend time on that in the text and the text address is solely that the totality of the circumstances The consent was involuntary and came back to whether the request to consent to a search violates Miranda I Mean is there any authority to the contrary the the law that's all been cited says that Consentive search doesn't invoke Miranda rights don't apply to it. Is there any law to the contrary? Right? There's one that we cited to the right There's a there's a case that was cited when this issue was raised in the district court Which is a northern district of New York case us versus Gilkerson where they ignored a request for an attorney and continued interviewing someone and tell me why why would a Request to consent to search invoke Miranda in your view. How does Miranda apply to that just briefly? I Think that by signing her name it could be considered that she's she had asked to remain silent and For them not to speak to her and so then when they asked her to consent and they asked her to sign her name Saying that she consents. I believe that that could be considered a violation I recognize that the law is Miranda concern testimony for testimonial statements And I mean if the police ask, you know, do you want to stop at McDonald's or do you want to you know? Do something along the way. I mean they can talk to her, but they they can't elicit testimonial responses Part of the investigation, but I mean there can be some interactions, right? I mean so I Understand that your honor and that's why I that's why I think the stronger the the more important issue is Really? Whether the blatant violation of her Fifth Amendment rights in can in ignoring that she had asked to remain silent and continue to speak with Her afterwards that then when that when the request to consent followed on the heels of that and that's why I pointed that Haines case Where there was also an elite Illegality that occurred before the request for consent and that idea of a sense of futility And that she was in custody and they point to that there's a key test especially when somebody's in custody that if you're not told that you can refuse consent that that's Has to be looked at in terms of whether that consent was was voluntary So with that I ask for a new trial for miss Kelly. Thank you Okay case will be submitted please call the next case